IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ANTHONY LEROY WAY,
    Plaintiff,

vs.                                                  Case No. 5:10cv107/RS/CJK

WALT MCNEIL, et al.,
    Defendants.

_____

REPORT AND RECOMMENDATION

    Plaintiff, proceeding *pro se* and *in forma pauperis*, has filed a sixth amended civil rights complaint (styled as fifth amended complaint, but actually the sixth) pursuant to 42 U.S.C. § 1983. (Doc. 45) Upon review of the amended complaint, the court concludes that plaintiff has not presented an actionable claim, and that dismissal of the case is warranted.

BACKGROUND AND PROCEDURAL HISTORY

    Plaintiff was an inmate of the Florida Department of Corrections ("DOC") when he initiated this lawsuit on May 6, 2010. (Doc. 1) Plaintiff, who filed his sixth amended complaint on January 7, 2011 (doc. 45), seeks compensatory damages based on his claims that prison officials failed to act on multiple grievances he filed concerning a physical assault that occurred while plaintiff was housed at South Florida Reception Center ("SFRC"). (Doc. 45, 5) In addition, plaintiff raises a claim of medical malpractice, alleging that he received negligent medical treatment following the assault. (Doc. 45, 6-8) In the sixth amended complaint, plaintiff names as defendants Walter McNeil ("McNeil"), former Secretary of DOC, and Dr. Izuegby

Moses ("Dr. Moses"), who was employed at Calhoun Correctional Institution ("Calhoun CI") at all times material to the complaint. (Doc. 45, 2)

The chronology of relevant events giving rise to this complaint begins on October 5, 2009, by which time plaintiff had been placed under investigation for the assault of a female prison officer. (Doc. 45, 5) Having been transferred to disciplinary confinement, plaintiff claims he was physically assaulted at approximately 3:00 a.m. on October 9, 2009, by three unidentifiable prison officers, who punched and kicked the inmate in the body and face. (Doc. 45, 5) Complaining of left inner ear pain, plaintiff was examined by Nurse Bennett on October 11, 2009. (Doc. 45, 5) The nurse, however, did not report plaintiff's assault allegations, prompting Mr. Way to initiate the grievance process. (Doc. 45, 5) To conceal evidence of the assault, defendant McNeil, according to the complaint, transferred plaintiff to no fewer than five different penal institutions and failed to act on his various grievances concerning the incident. (Doc. 45, 6)

On October 19, 2009, plaintiff was transferred from SFRC to Calhoun CI. (Doc. 45, 5) The following day, plaintiff asked to see a doctor. (Doc. 45, 6) On October 21, 2009, plaintiff was seen by Dr. Moses, who diagnosed an infection in the eardrum and prescribed a ten-day regimen of antibiotics. (Doc. 45, 6-7) Despite the medication, plaintiff was still experiencing ear pain ten days later. (Doc. 45, 7) Consequently, Dr. Moses prescribed a second round of antibiotics, but plaintiff's ear problem persisted nonetheless. (Doc. 45, 7) On November 2, 2009, Dr. Moses prescribed "antibiotic acid drops" and instructed plaintiff to use the drops three times per day for ten days. (Doc. 45, 7) After seven days, plaintiff returned to Dr. Moses complaining of increased inner ear pain. (Doc. 45, 7) The attending nurse explained that the drops were simply clearing out the infection. (Doc. 45, 7)

Having continued to use the drops, plaintiff awoke the next morning with severe pain and blood stains on his pillowcase. (Doc. 45, 7) Plaintiff was seen next by Dr. Moses's nurse, who confiscated the drops at the doctor's direction. (Doc. 45, 7) Despite plaintiff's complaints, Dr. Moses did not examine his inner ear during any of plaintiff's visits. (Doc. 45, 7) Plaintiff refused to take additional medications, because he did not believe that Dr. Moses was competent to provide treatment. (Doc. 45, 7) Dr. Moses referred plaintiff to an ear, nose, and throat doctor ("ENT"), who examined plaintiff on January 4, 2010. (Doc. 45, 7) Plaintiff relayed to the ENT the medications Dr. Moses had prescribed and explained that the antibiotic drops had caused his ear to bleed. (Doc. 45, 7) Upon examination, the ENT stated that the drops should not have been prescribed, because they can destroy tissue in the inner ear. (Doc. 45, 7-8) After ordering a hearing test, the ENT determined that plaintiff had suffered hearing loss in his left ear. (Doc. 45, 8) As a result, plaintiff began wearing a hearing aid. (Doc. 45, 8)

Based on the foregoing, plaintiff asserts claims against former Secretary McNeil for placing him in administrative segregation without due process of law, and failing to act on his grievances concerning the assault. (Doc. 45, 9) In addition, plaintiff asserts a claim of medical malpractice against Dr. Moses, stating the physician rendered negligent medical care. (Doc. 45, 9) Plaintiff seeks compensatory damages in the amount of $5,000,000.00. (Doc. 45, 9)

## DISCUSSION

Because plaintiff is proceeding *in forma pauperis*, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The court must read

plaintiff's *pro se* allegations in a liberal fashion. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Dismissals for failure to state a claim are governed by the same standard as FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6). *See Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). In determining whether the complaint states a claim upon which relief may be granted, the court accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and dismissing plaintiffs' case for failure to state a claim, because plaintiffs had "not nudged their claims across the line from conceivable to plausible"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

Under FEDERAL RULE OF CIVIL PROCEDURE 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court reiterated in *Iqbal*, 129 S. Ct. at 1949, although RULE 8 does not require detailed factual allegations, the rule does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." The mere possibility that the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *See id.* Rather, the complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," that is, "across the line from conceivable to plausible . . . ." *See Twombly*, 550 U.S. at 555, 570.

A complaint is also subject to dismissal for failure to state a claim when the allegations—on their face—show that an affirmative defense bars recovery on the claim. *See Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) (reiterating that principle and providing, as an example, that if a complaint's allegations show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim).

*Vicarious Liability Under § 1983*

"It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)); *see also Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a *respondeat superior* theory of liability."); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) ("'It is axiomatic, in section 1983 actions, that liability must be based on something more than a theory of respondeat superior.'" (quoting *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986))). "[T]he mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 n.58 (1978). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Brown*, 906 F.2d at 671. The U.S. Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") has set forth the limited circumstances in which a causal connection can be shown

sufficient to render a supervisor liable on a § 1983 claim:

> A causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so; when the supervisor's improper custom or policy leads to deliberate indifference to constitutional rights; or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008) (citing *West v. Tillman*, 496 F.3d 1321, 1328-29 (11th Cir. 2007).

Here, plaintiff presents no such allegations against former Secretary McNeil. That the Secretary's Office denied or declined to pass judgment upon plaintiff's grievances does not plausibly support a claim against former Secretary McNeil for the alleged constitutional deprivations that occurred at SFRC. A prison official who was not involved in the alleged constitutional violation, and whose only role involved the denial of administrative grievances or the failure to act, is not liable under § 1983 on the theory that an adverse grievance determination or the failure to act constituted acquiescence in the unconstitutional conduct. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (declining to impose liability under § 1983 on supervisory official who denied administrative grievance and otherwise failed to act based on information contained in the grievance); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) ("At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."); *Crowder v. Lash*, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages arising from any constitutional violation at a facility

within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions); *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989) (holding that prisoner failed to state a § 1983 claim against supervisory officials, where prisoner alleged merely that officials denied his grievance and did not claim that officials were personally involved in alleged misconduct). This is because liability under § 1983 must be based on affirmative unconstitutional behavior and cannot be based upon "a mere failure to act." *See Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998). Plaintiff's allegation that former Secretary McNeil is vicariously liable under § 1983 for the denial of his grievances fails to state a claim to relief that is plausible on its face and, therefore, should be dismissed for failure to state a claim upon which relief may be granted. *See Twombly*, 550 U.S. at 570.

*Administrative Segregation*

Without identifying a basis in law for the right allegedly violated, plaintiff also asserts that McNeil denied him due process of law by confining him to administrative segregation.[1] Even liberally construing plaintiff's claim as asserted under the Due Process Clause of the Fourteenth Amendment, the allegations still fail to state a claim upon which relief may be granted. The Due Process Clause prohibits state action that deprives a United States citizen of life, liberty, or property without due process of law. *See* U.S. CONST. amend. XIV. A person alleging a violation of his right to due process must establish that he was deprived of an interest cognizable under the Due Process Clause, and that the procedures attendant to that deprivation were not constitutionally sufficient. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989); *Bd. of Regents v. Roth*, 408 U.S. 564, 571 (1972).

---

[1] Presumably, plaintiff intends to advance this claim under the Due Process Clause of the Fourteenth Amendment.

In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Supreme Court redefined the circumstances in which a liberty interest will arise in the prison context for purposes of the protections of the Due Process Clause. Rejecting the prior manner of searching state statutes and prison regulations for mandatory language, the court held that due process liberty interests created by prison regulations "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See id.* The *Sandin* court cited *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital triggers due process protections), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs implicates Due Process Clause), as examples of restraints which trigger the Clause of its own force, but concluded that Conner's disciplinary conviction did not present a case where the state's action would inevitably affect the duration of his sentence, thereby triggering the Clause of its own force. Nor did Conner's discipline (thirty-day placement in disciplinary segregation) present the type of "atypical, significant deprivation in which a State might conceivably create a liberty interest." *See Sandin*, 515 U.S. at 485-86. As a result, the court held that neither the Hawaii prison regulation at issue nor the Due Process Clause itself afforded the inmate a constitutionally protected liberty interest.

The Eleventh Circuit has held that a Florida prisoner's confinement in administrative segregation for two months did not impose an atypical and significant hardship on the prisoner. *See Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998). Here, plaintiff fails to allege that he suffered any disciplinary action that was in excess of the sentence imposed or that constituted an atypical and significant

hardship "in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484.  In fact, plaintiff relies solely on the bare and conclusory assertion that he was confined to administrative segregation without due process of law, in violation of the Fourteenth Amendment.  Plaintiff does not establish the duration of his administrative segregation or articulate the nature of the disciplinary confinement vis-a-vis the ordinary conditions of confinement to which prisoners are routinely subject.  Consequently, plaintiff's complaint fails to state an actionable cause under the standard set forth in *Sandin*, and this allegation should be dismissed for failure to state a claim upon which relief may be granted.

*Medical Malpractice*

The claim against Dr. Moses for medical malpractice—in other words, negligence—is not cognizable under § 1983.  *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) (concluding that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property"); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.")); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) (declining to "second-guess the propriety or adequacy of a particular course of treatment" or "intervene upon allegations of mere negligence" in the context of a § 1983 claim)).  Rather, the proper forum for plaintiff's medical malpractice claim is state court under

the applicable tort statute. *See Daniels*, 474 U.S. at 332 (holding that the Constitution "does not purport to supplant traditional [state] tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society"); *Estelle*, 429 U.S. at 107. Having employed only the language of negligence, plaintiff fails to state a claim upon which relief may be granted.

Accordingly, it is respectfully RECOMMENDED:

1. That plaintiff's claims be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii), for plaintiff's failure to state a claim upon which relief may be granted.

2. That the clerk be directed to close the file.

At Pensacola, Florida this 28th day of March, 2012.

/s/ *Charles J. Kahn, Jr.*
CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).